IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

ARTHUR J. TURNER, III,

      Plaintiff,

  v.                                     Case No.  14-1170-KHV

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.

**MEMORANDUM AND ORDER**

On September 17, 2010, plaintiff filed an application for social security disability insurance benefits. He alleged a disability onset date of July 27, 2010. A hearing was conducted upon plaintiff's application on November 26, 2012. The administrative law judge (ALJ) considered the evidence and decided on January 31, 2013 that plaintiff was not qualified to receive benefits. This decision was adopted by defendant. This case is now before the court upon plaintiff's action to reverse and remand the decision to deny plaintiff's application for benefits. Upon careful consideration, the court concludes that the ALJ failed to properly consider whether plaintiff demonstrated that she meets the requirements for an award of benefits under § 1.04A of the Listing of Impairments. Therefore, the court shall reverse the decision to deny benefits and remand for further consideration.

I. STANDARD OF REVIEW

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131. To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards. Rebeck v. Barnhart, 317 F.Supp.2d 1263, 1271 (D.Kan. 2004). "Substantial evidence" is "more than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id., quoting Richardson v. Perales, 402 U.S. 389, 401 (1971). The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the defendant's decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human

Services, 933 F.2d 799, 800-01 (10th Cir. 1991)).  The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.  THE ALJ'S DECISION (Tr. 8-17).

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision.  (Tr. 412-413). First, the ALJ determines whether the claimant is engaging in substantial gainful activity.  Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe."  At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work.  Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.  In steps one through four the burden is on the

3

claimant to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006).  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity.  Id.

In this case, the ALJ decided plaintiff's application should be denied on the basis of the fifth step of the evaluation process.  The ALJ determined that plaintiff maintained the residual functional capacity to perform jobs that exist in significant numbers in the national economy.

The ALJ made the following specific findings in his decision.  First, plaintiff meets the insured status requirements for Social Security benefits through December 31, 2015.  Second, plaintiff did not engage in substantial gainful activity for a period of time after July 27, 2010, the alleged onset date of disability.  Third, plaintiff has the following severe impairments:  history of cervical spondylosis followed by anterior cervical decompression with fusion; degenerative disc disease of the cervical and lumbar spine; chronic obstructive pulmonary disease (COPD); adjustment disorder; and a history of marijuana abuse.[1]  Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

---

[1] The ALJ also found that plaintiff had hypoglycemia, but he considered this condition to be a non-severe impairment.

4

Fifth, plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b).  More specifically the ALJ concluded:

> [The claimant] can lift and carry up to 20 pounds occasionally, 10 pounds frequently, and stand, walk or sit for up to six hours of an eight hour workday.  He can frequently balance, crouch, crawl, and climb ramps and stairs; however, he must avoid ladders, ropes, and scaffolds.  He can perform overhead reaching occasionally.  Further, he must avoid concentrated exposure to cold temperature extremes and even moderate exposure to fumes, odors, dusts, gases, environments with poor ventilation, and vibration.  Lastly, he can perform simple tasks that are not performed as an integral part of a team and can occasionally interact with coworkers and the general public.

(Tr. 12).  Finally, the ALJ determined that plaintiff was unable to perform any past relevant work, but that he was capable of performing the following examples of substantial gainful employment:  inserting machine operator; collator operator; and injecting mold machine tender.  The ALJ based this conclusion in part upon answers given by a vocational expert.

III. EVIDENCE

Plaintiff has suffered back pain and neck pain.  The record reflects some lumbar problems which do not appear to have been as serious as plaintiff's cervical spine impairment for which plaintiff had surgery.  Plaintiff's arguments in this matter focus upon his cervical spine impairment.  So, the court will

review the evidence from treating sources regarding this condition.

In September 2010, plaintiff was examined by Dr. Paul Stein. Plaintiff complained of pain all over, numbness and tingling, surging irritation, as well as involuntary jerking of his arms and legs. (Tr. 257). It was noted that plaintiff walked with a marked left-sided limp.[2] (Tr. 256). His muscle stretch reflexes were very brisk. (Tr. 255). There was some giving away of strength when testing his left lower extremity. Id. Plaintiff also seemed very sensitive to pinprick perception testing in the lower extremities. Id. Plaintiff was scheduled for a MRI of his cervical spine which showed (in November 2010) considerable pathology and severe stenosis at C3-C4, C4-C5. (Tr. 253). Dr. Stein directed that plaintiff be off work. (Tr. 254).

Plaintiff was referred to a surgeon, Dr. Camden Whitaker. In January 2011, plaintiff reported that he had neck pain, left arm pain, low and mid-back pain and left leg pain. He also reported left upper extremity numbness and tingling, and involuntary jerking. (Tr. 304). Plaintiff's gait appeared normal. Palpation of his posterior cervical spine midline revealed slight tenderness. (Tr. 303). His active range of motion, flexion, extension and lateral bending of the cervical

---

[2] Plaintiff's lumbar range of motion was reported as being very limited. (Tr. 256).

spine were slightly reduced from normal limits with a slight amount of difficulty.  Id.  Sensation was intact, equal and symmetric C5 through T1.  Id.  Deep tendon reflexes at biceps, brachialis, triceps, patellar and Achilles tendons were 2+ throughout the right side and 3+ to 4 with significant difference between the two sides.  Id.

In February 2011, Dr. Whitaker diagnosed plaintiff with cervical spondylosis with cervical myeopathy and cervical stenosis with no evidence of radiculopathy.  (Tr. 301).  Dr. Whitaker performed surgery on plaintiff on May 19, 2011.  During surgery, he observed evidence of severe stenosis and broad-based disk herniation at C3-C4.  (Tr. 388).  His post-surgery diagnosis was:  1) cervical stenosis from C3-6 with herniated nucleus pulposus, spinal cord signal change and cervical myelopathy; and 2) cervical myelopathic radicular syndrome. (Tr. 389).  Plaintiff showed significant improvement after surgery.  But, according to the ALJ, plaintiff was unable to return to work for a period of five or six months following his surgery.  (Tr. 14-15).

IV.     THE ALJ DID NOT PROPERLY ANALYZE EVIDENCE RELATING TO A §1.04A IMPAIRMENT.

Plaintiff's first argument to reverse the decision to deny benefits relates to step three of the ALJ's analysis.  At this step, the ALJ decides whether plaintiff had any medically severe

7

impairment which alone or in combination with other impairments is equivalent to any of a number of listed impairments so severe as to preclude substantial gainful employment. See Fischer-Ross v. Barnhart, 431 F.3d 729, 731 (10th Cir. 2005). If the ALJ decides that plaintiff has a listed impairment then plaintiff is entitled to benefits. Id.

Plaintiff argues that the ALJ erred in finding that plaintiff's spinal impairment did not meet or equal the requirements in § 1.04A of the Listing of Impairments. Plaintiff has the burden of proof on this issue. See Lax, 489 F.3d at 1084.

Section 1.04A reads:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

The ALJ held that plaintiff's impairment did not satisfy §1.04A because: "the medical evidence did not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under

listing 1.04 [and] there is no evidence that the claimant's back and neck disorder has resulted in an inability to ambulate effectively, as defined in 1.00(B)(2)(b)."  (Tr. 11).

The court agrees with plaintiff that the ALJ did not adequately support this finding.  In general, an ALJ has the obligation to discuss specific medical evidence that supports a determination that a listed impairment is not demonstrated.  See Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  This discussion may not be necessary if there is no evidence to support a claim of a listed impairment.  See Groberg v. Astrue, 415 Fed.Appx. 65, 72 (10th Cir. 2011).  But, where there is evidence that a plaintiff may meet a listed impairment's requirements, the ALJ is required to discuss that evidence.  Id.; Henderson v. Astrue, 383 Fed.Appx. 700, 701-03 (10th Cir. 2010); Barrows v. Colvin, 2013 WL 2147548 *3-4 (D.Colo. 5/15/2013); Jonas v. Astrue, 2012 WL 1536340 *5 (D.Kan. 5/1/2012).  In the review of evidence in part III of this opinion, the court has noted evidence which may support a finding of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, and motor loss accompanied by sensory or reflex loss.  This evidence included complaints of pain, numbness, and tingling; evidence of a limp and of plaintiff's left leg giving away; and evidence of a slightly reduced range of motion of

9

plaintiff's cervical spine. There was also a diagnosis of severe stenosis and cervical myelopathic radicular syndrome. The ALJ's failure to discuss and weigh this evidence requires the court to remand this case for further proceedings consistent with this opinion.

Plaintiff also argues that the ALJ erred in performing the step four analysis in this case. The court, however, does not believe it would be useful to discuss this argument since remand is necessary for the ALJ to discuss and weigh some of the same evidence in relation to step three of the standard benefits analysis.

V. CONCLUSION

For the above-stated reasons, the court reverses defendant's decision to deny plaintiff's application for benefits. The court directs that this case be remanded to the Commissioner for further proceedings consistent with this opinion. This remand is made under the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

**Dated this 20th day of August, 2015, at Kansas City, Kansas.**

                                            **s/KATHRYN H. VRATIL**
                                            **KATHRYN H. VRATIL**
                                            **UNITED STATES DISTRICT JUDGE**